OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* Recall of retired judges. *Retirement. Judge.*

Proposed legislation, providing for the establishment of a list of senior justices who may be recalled to perform temporary service, for placement on the list of retired judges who first have obtained the approval of the Governor with the advice and consent of the Executive Council, and for performance of judicial duties by a senior justice after he has been "designated and assigned" by specified justices, would not contravene a proposed constitutional amendment providing that "upon attaining seventy years of age . . . judges shall be retired," even though a senior justice recalled to service may have attained that age. [901–905]

Under a proposed constitutional amendment providing for the mandatory retirement of judges upon attaining seventy years of age,

and that such retirement "shall be subject to any provisions made by law as to pensions or allowances payable to such . . . [judges] upon their voluntary retirement," the pension rights of a retired judge who has attained seventy years of age and is recalled to perform temporary service under proposed legislation, which provides that a recalled judge will be eligible, on a daily basis, for the "difference" between his pension and the maximum rate then payable to an active judge, would be adequately safeguarded. [905–906]

On June 29, 1972, the Justices submitted the following answers to questions propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order of the Senate adopted on June 19, 1972, and transmitted to us on June 21, 1972. The order recites the pendency before the General Court of a bill, Senate No. 1363, a copy of which is transmitted with the order. The bill is entitled, "An Act relative to temporary service by certain retired chief justices and associate justices of the several courts of the commonwealth."

The bill inserts new sections 65D through 65F and a new section 65H in G. L. c. 32 (Retirement Systems and Pensions) and reads in its entirety as follows:

"*Section 65D.* Retirement Lists of Senior Justices or Judges of the Several Courts of the Commonwealth: — (1) (a) A chief justice, associate justice, chief judge, judge or associate judge or special justice each of which offices is hereinafter called justice, of one of the several courts of the commonwealth who is eligible to resign his office and retire under the provisions of section 65A may notify the governor in writing prior to such proposed retirement or resignation that he wishes to be placed, as of the effective date of his proposed resignation, upon the list of senior justices, of the court upon which he has served, who may be recalled to perform temporary service. Upon the approval of the governor with the

advice and consent of the executive council, such justice shall be retired and shall be placed upon said list of senior justices, hereby established, and may thereafter perform judicial duties as provided in section 65F of this act. (b) The governor with the advice and consent of the executive council may at any time place the name of a justice who has resigned or retired prior to the effective date of this act, and with such justice's consent, on the list of senior justices for the court on which he sat prior to such resignation or retirement. (c) Thereafter, not withstanding any other provision of this chapter, such retired chief justice or associate justice shall any widow of such chief justice or associate justice shall be entitled to the same pension and all other benefits which such chief justice or associate justice or widow would have been entitled to receive if such chief justice or associate justice had resigned and had not been placed on such list, at the time of or subsequent to his resignation or retirement. (2) If such senior chief justice or associate justice no longer wishes to be eligible to per-form judicial duties pursuant to said sections, as the case may be, he may at any time after being placed upon said list withdraw his name and thereafter he and any widow of his shall be, and shall continue to be, entitled to receive the same pension and all other benefits which such chief justice or associate justice or widow would be entitled to receive if the name of such chief justice or associate justice had never been placed upon such list and had resigned or retired at the time of or before being placed thereon.

"*Section 65E*. Special provisions applicable to Justices upon the list of senior justices — A retired chief justice or a retired associate justice while remaining upon a list of senior justices referred to in section sixty-five D (a) shall not engage in the practice of law directly or indirectly, provided, however, that this section shall not prevent him from engaging in the teaching of law, from serving as commissioner, master, or auditor appointed by any court of the commonwealth or another

state or by any federal court, or as an arbitrator, or from serving as any type of fiduciary, and (b) shall not hold any office which is incompatible with holding the office of chief justice or associate justice of any court of which he is on the retired list under the provisions of part 2, chapter six, article II of the Constitution of the Commonwealth or of article LVIII of the Amendments thereto.

"*Section 65F.* Services of Retired Chief Justice or Associate Justice. — (a) A chief justice of one of the several courts who has retired under the provisions of section sixty-five D of chapter thirty-two, may be designated and assigned by the chief justice or acting chief justice of the court on which he served prior to retirement to perform such of the duties of the office of chief justice or an associate justice of such court as may be requested of him and which he is willing to undertake.

"(b) Any associate justice of one of the several courts who has retired and is on the list of senior justices under the provisions of section sixty-five D of chapter thirty-two may be designated and assigned by the chief justice or acting chief justice of the court on which he served prior to retirement to perform such of the duties of the office of associate justice of such court as may be requested of him and which he is willing to undertake.

"(c) Any chief justice or associate justice of one of the several courts who has retired and is on the list of senior justices under the provisions of section sixty-five D of chapter thirty-two may be designated and assigned by the chief justice or acting chief justice of the Supreme Judicial Court to perform such of the duties of the office of associate justice, justice or judge of any court inferior to the one on which such senior justice sat prior to retirement as may be requested of him and which he is willing to undertake.

"(d) In performing the services requested of him a senior chief justice or associate justice shall exercise all judicial power and authority pertaining to the office in which he acts, in respect of matters as to which he is

designated to act, and the fact of such service shall be stated on the records of the court, but need not be separately stated in the record or docket of any particular cause or proceeding. Service under the provisions of this section shall not be counted in determining the number of offices authorized or required for the court by an applicable statute.

"(e) A retired chief justice or associate justice so serving shall be paid by the commonwealth in addition to his pension an amount equal to the difference between the then current rate by the day of the compensation of a regular incumbent of the office which he formerly held and the maximum rate by the day of the pension which such senior justice is entitled to receive from the commonwealth by virtue of his prior judicial service. In computing each of such rates by the day, Sundays and holidays shall be excluded. Upon the certificate of the chief justice of the court upon which he formerly sat, he shall be reimbursed for expenses incurred while performing judicial services at any place other than his place of residence.

"*Section 65H*. None of the limitations upon service of retired officers and employees contained in section ninety-one of chapter thirty-two of the General Laws, as amended, shall apply to the service of senior justices pursuant to section 65F or other provisions of this chapter."

The order recites that grave doubts exists as to the constitutionality of the bill if enacted into law.

The questions are:

"1. Would said bill, if enacted into law, be in contravention of the proposed constitutional amendment providing for compulsory retirement of judges at age seventy if approved by the voters of the commonwealth at the biennial state election to be held in the year of nineteen hundred and seventy-two?

"2. Do the provisions of said Senate Bill No. 1363 adequately safeguard the pension rights of those judges

who would serve pursuant to its provisions if said proposed constitutional amendment is approved?"

The proposed amendment is entitled a "Proposal for a legislative amendment to the constitution requiring the retirement of judges at age seventy." It reads as follows: "*Article I.* The tenure, that all commissioned officers shall by law have in their offices, shall be expressed in their respective commissions. All judicial officers, duly appointed, commissioned and sworn, shall hold their offices during good behavior, excepting such concerning whom there is different provision made in this Constitution; provided, nevertheless, the governor, with the consent of the council, may remove them upon the address of both houses of the legislature; and provided, also, that the governor, with the consent of the council, may after due notice and hearing retire them because of advanced age or mental or physical disability; and provided further, that upon attaining seventy years of age said judges shall be retired. Such retirement shall be subject to any provisions made by law as to pensions or allowances payable to such officers upon their voluntary retirement."

As so worded and with the same title, the amendment was approved by joint sessions of the General Court in 1969 and 1971. See 1969 House Bill No. 2244, as amended; 1971 House Bill No. 5328. See also 1969 Senate Journal, pp. 1470–1474; 1971 Senate Journal, pp. 1294–1296. If approved by the voters in the general election to be held on November 7, 1972, it will become part of the Constitution. Art. 48 of the amendments to the Constitution, The Initiative, IV, as amended by art. 81.

In the event that the voters approve the proposed amendment, it would make compulsory the retirement of all judges in the Commonwealth who reach the age of seventy. It would similarly force immediate retirement upon those justices now sitting who have already

attained that age.  We are urged by the amicus curiae
brief filed by the Massachusetts Bar Association[1] to take
"judicial notice that many justices of the Superior Court
and the District Courts have attained the age of seventy
or will do so within a few months."  The brief informs
us that "[w]hile precise statistical information is not
available, it appears that at least ten of the forty-six
justices of the Superior Court are in that category, as
are at least twenty-seven of the 161 judges of the District
Courts.  Thus the constitutional amendment would re-
quire the immediate retirement of almost one-fifth of the
present justices of the general trial courts of the Com-
monwealth."  In these circumstances we agree with the
Massachusetts Bar Association that the above questions
are "important questions of law," and that this is a
"solemn occasion" upon which we have a duty to furnish
an advisory opinion under art. 85 of the amendments
of the Constitution of the Commonwealth.

1. We first discuss the legislative history of the pro-
posed amendment.  As originally proposed, 1969 House
Bill No. 2244 appears also to have provided for the
recall of retired judges.  It was then entitled a "Pro-
posal for a legislative amendment to the constitution to
require mandatory retirement of judges at age seventy
and providing for the recall of certain judges for tem-
porary active service."  On April 29, 1969, the respec-
tive committees on the Judiciary in the House and
Senate reported the bill and recommended that it ought
NOT to pass, and it was placed on file.  See 1969 Senate
Journal, p. 1941; 1969 House Journal, p. 1487.

On May 28, 1969, at a joint session of the General
Court the proposed amendment was amended by striking
out the following sentence: "Any chief justice, associate
justice or judge retired may, subject to his consent, be
recalled for temporary active service in his respective

---

[1] The Boston Bar Association has also filed an amicus curiae brief.
Both briefs have urged us to uphold the constitutionality of the pend-
ing bill.

court." See 1969 Senate Journal, p. 1308; 1969 House Journal, p. 1863.

The rejection of the recall provision in the amendment, it may be argued, indicates that the intent behind the amendment is to require judges to retire at seventy with no exceptions. The fact that some other jurisdictions specifically provide in their Constitutions for the recall of judges who pass the mandatory retirement age lends some support to this argument. See, e.g., N. Y. Constitution, art. 6, § 25 (2 McKinney's Consol. Laws of N. Y.); Texas Constitution, art. 5, § 1–a (Vernon's Ann.); Conn. Gen. Sts. Ann., Constitution, art. 5, § 6. However, we have considerable doubt from our examination of the legislative history of the amendment that it sheds much light on the questions before us. First, it is ultimately the voters who will determine the fate of the amendment; and since the question of recall of retired judges has not been and will not be presented to them, we are unable to discern their intent on this matter. Second, if the Legislature passes the recall bill before the November election, and the proposed amendment is adopted, it might reasonably be argued that the Legislature and the voters regard the bill and the amendment as complementary, or at least not inconsistent.

2. Statutes authorizing the recall of retired judges into active service have been enacted in other jurisdictions and have been upheld against constitutional objection. See e.g. *Pickens* v. *Johnson,* 42 Cal. 2d 399; *Werlein* v. *Calvert,* 460 S. W. 2d 398 (Texas); *State ex rel New Washington Oyster Co. Inc.* v. *Meakim,* 34 Wash. 2d 131. In *Nelson* v. *Miller,* 25 Utah 2d 277, 288, the Supreme Court of Utah held that there was no "constitutional conflict between mandatory retirement for age and legislative authorization for calling a judge back into service from retirement upon a 'case-to-case' basis."

The resolution of the questions propounded to us by the Senate depend upon the precise wording of the proposed amendment. In interpreting the proposed amend-

ment we are guided by our familiar rule: "If possible, the amendment must be construed so as to accomplish a reasonable result and to achieve its dominating purpose. Its words should be interpreted in the sense most obvious to the common intelligence, because a matter proposed for public adoption must be understood by all entitled to vote." *Lincoln* v. *Secretary of the Commonwealth*, 326 Mass. 313, 317, and cases cited. The crucial words of the amendment are that "upon attaining seventy years of age said judges shall be retired." The phrase "shall be retired" is clearly compulsory. See *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass. 102, 113. "Retire" has been defined to mean "to withdraw from office" and "to withdraw from active service." 77 C. J. S. 329–330. The latter definition suggests to us that the amendment was not intended to rule out the possibility of recall for temporary or restricted service under a carefully drawn statute.[2]

It is instructive to note examples of constitutional language from other jurisdictions dealing with the same subject matter: (1) "No person shall hold the office of judge or justice of any court . . . ." N. Y. Constitution, art. 6, § 19 (repealed 1962), as cited in *Johnson* v. *Flynn*, 160 Misc. (N. Y.) 93, 94; (2) "The office of every such Justice and Judge shall become vacant when the incumbent reaches the age of . . . ." Texas Constitution, art. 5, § 1–a (Vernon's Ann.) (discussed in *Werlein* v. *Calvert*, 460 S. W. 2d 398 [Texas]) ; (3) "No judge or justice of the peace shall be eligible to hold his office after he shall arrive at the age of seventy years, except that . . . ." Conn. Gen. Sts. Ann., Constitution, art. 5, § 6. By contrast with the above provisions, the amendment before us merely provides that judges "shall be retired." It is significant that the amendment does not provide that a judge shall not hold office after reaching a certain age. Accordingly there is no conflict be-

---

[2] For examples of statutory provisions for the temporary recall to active status of "retired" policemen or firemen, see G. L. c. 32, §§ 68, 69, 83, 83A and 85.

tween the precise language of the amendment and the bill.[3]

Unfortunately there have been individuals who have continued to hold judicial office when their advancing years have made them incapable of effectively performing their judicial tasks. The amendment guards against this possibility. We are equally aware of the fact that there are many judges above the age of seventy years who retain physical vigor and mental keenness and are unquestionably competent in continuing to perform judicial duties, particularly where such duties are performed on a temporary basis. Chronological age is hardly the sole test of competency. One need only cite the extremely effective judicial services rendered by Justices Holmes, Brandeis, Frankfurter and Black, each of whom served well beyond the age of seventy with great benefit to the nation.

The proposed bill in two specific ways protects the citizenry from ineffective judicial services by retired judges. First, under § 65D, a retired judge would need the approval of the Governor with the advice and consent of the Executive Council before he could be placed upon the list of senior justices. Second, under § 65F, before a senior justice could perform any judicial duties he would have to be "designated and assigned" by the chief justice or acting chief justice of the court on which he served prior to retirement, or by the chief justice or acting chief justice of the Supreme Judicial Court. Thus, with these safeguards, the proposed bill avoids depriving the Commonwealth, absolutely and without exception, of the knowledge and experience of retired judges who have attained the age of seventy years.

---

[3] We note that the bill in many instances appears to use the words "resign" and "retire," and variations thereof, interchangeably. Unlike the Federal system, it is of no consequence whether a judge of the Commonwealth chooses to "resign" or "retire." Compare G. L. c. 32, §§ 65A–65C with 28 U. S. C. §§ 371–376 (1970). See *Booth* v. *United States*, 291 U. S. 339.

Finally, we cannot disregard certain unusual and pragmatic considerations. We are cognizant of the fact that approval of the proposed amendment would cause the immediate retirement of a substantial number of experienced judges. This would undoubtedly create great confusion and possible chaos throughout our entire judicial system. Courts throughout the Commonwealth are burdened with intolerable case loads. It is common knowledge that in several counties civil business is at a virtual standstill as the courts attempt to afford defendants in criminal cases a speedy trial. What Justice Powell has termed the "recent constitutional explosion in procedural rights for the accused" (*Argersinger* v. *Hamlin,* 207 (U. S. 25, 58) has resulted in a judicial system barely able to cope with the unparalleled congestion. To hold that the Legislature would be prevented from recalling retired judges to active service by the proposed amendment would greatly diminish the quality of justice for all.

We recognize that if the Constitution requires a result, practical problems are immaterial. However, when no previous decision or rule of law is applicable, public policy considerations are entitled to and are often given great weight. See *Commonwealth* v. *Yee,* 361 Mass. 533, 538; *Opinion of the Justices,* 254 Mass. 617, 619.

For the foregoing reasons we answer the first question, "No."

3. With regard to question 2, the amendment itself provides that mandatory retirement "shall be subject to any provisions made by law as to pensions or allowances payable to such officers upon their voluntary retirement." Thus judges who are retired mandatorily will be eligible for the pension benefits provided in G. L. c. 32, §§ 65A–65C. Under the proposed § 65F (e) a retired senior justice serving on a temporary assignment would be eligible, on a daily basis, for the "difference" between his pension and the maximum rate then payable to an active judge. The provisions of the bill adequately safe-

guard the pension rights of retired judges who thus serve.

We believe it necessary, however, to point out that the pending bill may create an inequality not intended by the Legislature. A judge who is retired or resigns and who is entitled to a pension under G. L. c. 32, § 65A or § 65B may elect, under § 65C, to receive a pension for life at a lesser annual rate with the provision that upon his death, two-thirds of his pension shall be paid to his widow for the remainder of her life. It seems clear to us that the Legislature did not intend that such a retired judge who is called to serve in a temporary capacity should receive a sum greater than another retired judge recalled for temporary service would receive. However, there appears to be an ambiguity in the bill in that such a judge who has elected to receive a lesser annual rate in order to provide for his widow under § 65C would receive on a per diem basis an amount greater than a retired judge who did not make such an election by virtue of the fact that the "difference" would be greater. A similar situation might arise in the case of a retired judge who was appointed to a judicial office after having attained the age of sixty years. (See the third paragraph of G. L. c. 32, § 65A.)

Subject to the foregoing clarification, we answer the second question, "Yes."

G. JOSEPH TAURO.
JACOB J. SPIEGEL.
PAUL C. REARDON.
FRANCIS J. QUIRICO.
ROBERT BRAUCHER.
EDWARD F. HENNESSEY.