BENJAMIN APKIN vs. TREASURER AND RECEIVER GENERAL[1]
& others.[2]

Suffolk.  December 10, 1987. — January 6, 1988.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Commerce clause, Supremacy of Federal law, Federal
preemption, Judiciary, Retirement. *Federal Age Discrimination in Em-
ployment Act. Retirement. Judge.*

In enacting the language of Pub. L. 99-592, §§ 2 (c), 7, 100 Stat. 3342,
3345 (1986), which, effective January 1, 1987, amended the Federal
Age Discrimination in Employment Act so as to make the Act applicable,
with certain exceptions, to persons who attain the age of seventy, Con-
gress did not intend to preempt the provision of art. 98 of the Amendments
to the Massachusetts Constitution, approved by the people in 1972, that
compels the retirement of Massachusetts judges at age seventy. [431-436]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on October 22, 1987.

The case was reported by *Lynch*, J.

*John P. Slattery* for the plaintiff.

*H. Reed Witherby*, Assistant Attorney General, for the de-
fendants.

*Charles Shanor* of the District of Columbia and *Robert L.
Williams, James L. Lee & Cheryl Kramer* of New York, for
United States Equal Employment Opportunity Commission,
amicus curiae, submitted a brief.

WILKINS, J.   We deal with a provision of the Constitution
of the Commonwealth which requires all Massachusetts judges
to retire at the age of seventy and the contention of the plaintiff

---

[1] The State Treasurer and Receiver General is sued in his capacity as
chairman of the Massachusetts Retirement Board.

[2] The Comptroller of the Commonwealth and the Chief Administrative
Justice of the Trial Court.

judge that a 1986 amendment to the Federal Age Discrimination in Employment Act (FADEA) overrides that requirement and bars the defendants from retiring him at the age of seventy.

The Honorable Benjamin Apkin has served as a judge in the District Court of the Commonwealth since his nomination and appointment in 1957 by the Governor, with the advice and consent of the Council, pursuant to Part II, c. 2, § 1, art. 9, of the Constitution of the Commonwealth. He is now presiding justice of the Northern Berkshire Division of the District Court Department. The defendants are responsible for the administration and enforcement of the retirement laws of the Commonwealth as they relate to Judge Apkin.

Judge Apkin was born on January 14, 1918, and will attain the age of seventy on January 13, 1988.[3] After his seventieth birthday Judge Apkin may seek to be recalled to serve as a judge under G. L. c. 32, § 65G (1986 ed.), but he has no right to be recalled. Upon retirement, Judge Apkin will be entitled to a pension in the amount of seventy-five per cent of his annual salary. G. L. c. 32, § 65A (1986 ed.).

Judge Apkin commenced this action on October 22, 1987, in the Supreme Judicial Court for the county of Suffolk. A single justice of this court reserved decision and reported the case to the full court on the pleadings and a statement of agreed facts. The judge seeks a declaration of his rights and an injunction against enforcement of the constitutional provision mandating his retirement at age seventy.

On November 7, 1972, the people approved, by a vote of 1,608,282 (76%) to 502,743 (24%), a constitutional amendment which requires that all judges shall be retired at age seventy.[4] See Return of Votes, 1973 Acts and Resolves of

---

[3] Under the common law and the law of the Commonwealth, each year a person attains his or her next age on the day before the anniversary of his or her birth. See 1 I. Redfield, Wills *20; Rep. A.G., Pub. Doc. No. 12, at 98 (1961).

[4] The language then added by art. 98 of the Amendments to Part II, c. 3, art. 1, of the Constitution was as follows: "provided further, that upon attaining seventy years of age said judges [referring to all judicial officers] shall be retired." The amendment made "compulsory the retirement of all judges in the Commonwealth who reach the age of seventy." *Opinion of*

Massachusetts 1779-1785. A majority of those voting in each city and town in the Commonwealth was in favor of the amendment. *Id*. There is not the least doubt that, for the purposes of State law, the 1972 amendment compels the retirement of a Massachusetts judge who attains the age of seventy.

The FADEA, 29 U.S.C. §§ 621 et seq. (1982), makes it unlawful, speaking generally, for an employer to discriminate against any employee over the age of thirty-nine on the basis of age. The FADEA did not apply to State employees until 1974, when Congress amended the definition of "employer," 29 U.S.C. § 630 (b) (Supp. IV 1974), to include a State and any political subdivision or State agency. Pub. L. 93-259, § 28 (a) (1)-(4), 88 Stat. 74 (1974). At that time the FADEA applied only to persons at least forty years of age and under the age of sixty-five. 29 U.S.C. § 631(a) (1970). Pub. L. 90-202, § 12, 81 Stat. 607 (1967). In 1978 the age limit was generally increased to seventy and was eliminated entirely for Federal employees. Pub. L. 95-256, § 3(a), 92 Stat. 189 (1978). The conflict between the FADEA and the State Constitution's mandate that judges retire at age seventy thus did not arise until 1986, when Congress amended the FADEA (effective January 1, 1987) to apply to all employees who had attained the age of forty. 29 U.S.C. § 631(a). Pub. L. 99-592, §§ 2(c), 7, 100 Stat. 3342, 3345 (1986). The effect of that amendment was to make the FADEA applicable for the first time, with certain

*the Justices*, 362 Mass. 895, 900 (1972).

Part II, c. 3, art. 1, in its entirety reads as follows: "The tenure that all commissioned officers shall by law have in their offices, shall be expressed in their respective commissions. All judicial officers, duly appointed, commissioned and sworn, shall hold their offices during good behavior, excepting such concerning whom there is different provision made in this Constitution; provided, nevertheless, the governor, with the consent of the council, may remove them upon the address of both houses of the legislature; and provided, also, that the governor, with the consent of the council, may after due notice and hearing retire them because of advanced age or mental or physical disability; and provided further, that upon attaining seventy years of age said judges shall be retired. Such retirement shall be subject to any provisions made by law as to pensions or allowances payable to such officers upon their voluntary retirement."

The "provided, also" clause was approved by the people in 1918. Art. 58 of the Amendments to the Constitution.

exceptions, to individuals outside Federal employment who had attained the age of seventy. It is clear that, if the 1986 amendment to the FADEA does apply lawfully to Massachusetts judges, the forced retirement of all Massachusetts judges at age seventy is a prima facie violation of the FADEA. *EEOC v. Trabucco*, 791 F.2d 1, 3 (1st Cir. 1986).[5]

The definition of "employee" in the FADEA excludes "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof." 29 U.S.C. § 630(f). The vast majority of State judges in this country are elected. See Legislative Research Council Report Relative to Judicial Selection in the United States, 1986 House Doc. No. 5492, at 27-30; Berkson, Beller & Grimaldi, Judicial Selection in the United States: A Compendium of Provisions 6-7, 18-46 (American Judicature Society 1980). The FADEA provides them no protection against mandatory retirement. An elected judge, therefore, may be involuntarily retired at age seventy (or at any other age) if the law of that judge's State so provides. It is Judge Apkin's view that Congress intended a different result for that relatively small percentage of State judges who are appointed and live in States mandating retirement at a given age.

---

[5] The defendants make no claim that Judge Apkin is not an employee for the purposes of the FADEA. See 29 U.S.C. § 630(f), defining "employee." Nor do they argue that Judge Apkin is excluded from the coverage of the FADEA under 29 U.S.C. § 631(c) (1), which permits the compulsory retirement of an employee who has attained the age of sixty-five and "is employed in a bona fide executive or high policymaking position," if the employee has certain retirement or similar benefits immediately available to him. We express no opinion whether any judge in the Commonwealth, particularly an administrative judge, could meet the criteria established by regulations of the Equal Employment Opportunity Commission for determining whether a person is employed in a bona fide executive or high policymaking position. See, as to "bona fide executive," 29 C.F.R. § 1625.12(d) (1987), incorporating by reference standards set forth in 29 C.F.R. § 541.1(a)-(e) (1987) (regulations under the Fair Labor Standards Act of 1938). See, as to "high policymaking position," 29 C.F.R. § 1625.12(e) (1987).

Because Judge Apkin became a judge before the adoption of the 1972 amendment mandating retirement at age seventy, we do not have before us the question whether a judge appointed after the adoption of the 1972 amendment was appointed in effect to a term ending at age seventy and thus has no right to serve after attaining the age of seventy.

We fully acknowledge the controlling influence of the supremacy clause (art. VI, cl. 2) of the Constitution of the United States and recognize our obligation to hold a provision of the Constitution of the Commonwealth invalid if it conflicts with a lawful act of Congress. *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 243-244 (1946). See *Public Utils. Comm'n* v. *United States*, 355 U.S. 534 (1958). The defendants suggest the question whether in our Federal system there still remains at least some substantive limitation on the power of Congress to dictate the terms under which a State may structure and operate its government. They argue, however, only that Congress's failure expressly to exclude appointed judges, like elected judges, from the FADEA was an oversight, and that this congressional indirection and inadvertence is not a proper basis on which to annul a democratically expressed choice that State judges be retired at age seventy.

We conclude, first, that a statute should not be read in derogation of a State's sovereign interests unless it clearly appears that Congress so intended, and, second, that Congress did not clearly express an intention to apply the FADEA to appointed State judges. Therefore, the FADEA does not preempt our State constitutional provision for mandatory retirement at age seventy for State judges.

It has been recognized under the commerce clause that there are few limitations on Congress's power to legislate on matters of State sovereignty. *Garcia* v. *San Antonio Metropolitan Transit Auth.*, 469 U.S. 528, 556 (1985). The FADEA properly applies under the commerce clause to State employees in general. See *Johnson* v. *Mayor of Baltimore*, 472 U.S. 353 (1985); *EEOC* v. *Wyoming*, 460 U.S. 226, 243 (1983) (game wardens). On the other hand, the *Garcia* opinion expressly reserved the question of "what affirmative limits the constitutional structure might impose on federal action affecting the States under the Commerce Clause." *Garcia* v. *San Antonio Metropolitan Transit Auth.*, *supra* at 556. There is no opinion of the Supreme Court of the United States upholding, under the commerce clause (or otherwise), a congressional act which sought to pre-

empt a State constitutional provision concerning its frame of government.[6]

Although the Supreme Court has left the question open (see *EEOC* v. *Wyoming, supra* at 243), there is authority that the FADEA was adopted pursuant to Congress's power under § 5 of the Fourteenth Amendment. See *Ramirez* v. *Puerto Rico Fire Serv.*, 715 F.2d 694, 699 (1st Cir. 1983); *EEOC* v. *County of Calumet*, 686 F.2d 1249, 1251-1253 (7th Cir. 1982). If that is so, whatever residual Tenth Amendment rights the States may have for commerce clause purposes may be irrelevant, if there are no substantial limits on the power of Congress to use § 5 to regulate the States (see *Fitzpatrick* v. *Bitzer*, 427 U.S. 445, 456 [1976]), and assuming that the FADEA's vagarious and arbitrary application to State judges can be sustained as a proper exercise of Congress's § 5 power. The purpose of the FADEA is to prohibit "arbitrary age discrimination." 29 U.S.C.

---

[6] We are aware of no judicial opinion which considers the issue in this case. There are opinion letters which deal with the applicability of the FADEA to State judges. See 71 Op. of Att'y Gen. of Md. (Opinion No. 86-068) (December 29, 1986); Op. of Att'y Gen. of S.C. (January 13, 1987); E.E.O.C. Op. Letter No. 7 (April 7, 1987). Each opinion concluded that the FADEA exempted appointed State judges from State mandatory retirement provisions. None of these opinions analyzed the questions whether the FADEA preempted State mandatory retirement laws (the point was assumed) or whether there was any constitutional problem where a Federal statute which, read literally, might apply to appointed State judges in fact did so only inadvertently and in an irrationally random way.

Cases in New York have dealt with the mandatory age retirement provisions, but none has considered the issue before us. In *Maresca* v. *Cuomo*, 64 N.Y.2d 242 (1984), appeal dismissed, 474 U.S. 802 (1985), the Court of Appeals considered and rejected an argument that State constitutional and statutory requirements that certain judges retire at age seventy were a violation of the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution. Recently that court considered constitutional challenges of the same character as those raised in the *Maresca* case, based on the distinction made between elected and appointed judges in New York. *Diamond* v. *Cuomo*, 70 N.Y.2d 338 (1987). The "Administrative Board [had] determined that the statutory protection [of FADEA, as amended] required that appointed Judges be allowed to continue to the end of their appointive terms, notwithstanding their age, but that elected Judges must retire at age 70 because the Federal statute, by its terms, did not apply to elected State officers (29 U.S.C. § 630[f])." *Id.* at 341. The Court of Appeals rejected the constitutional claims. The correctness of the interpretation of FADEA made by the Administrative Board was not before the court.

§ 621(b). Assuming the plaintiff's view of the requirements of the FADEA is correct, the FADEA would itself arbitrarily discriminate between elected judges (who may be required to retire at age seventy or at any other age) and appointed judges (who cannot be required to retire at any time on account of age).

We need not speculate further on whether the Supreme Court of the United States would uphold a clearly expressed congressional intent to abrogate a State law mandating the retirement of judges at age seventy. We see no preemption here because Congress did not intend to override a State law which requires judges to retire at a particular age.

The courts historically have been reluctant to infer preemption. See *Maryland* v. *Louisiana*, 451 U.S. 725, 746-747 (1981). Preemption should be found where State law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines* v. *Davidowitz*, 312 U.S. 52, 67 (1941). See *Exxon Corp.* v. *Governor of Md.*, 437 U.S. 117, 132 (1978), and cases cited.

Congress's deliberate choice should be expressed in a clear statement of intent when a Federal statute impinges on areas that implicate State sovereignty as intimately as the structure of a State's judicial branch. "[T]o give the state-displacing weight of federal law to mere congressional *ambiguity* would evade the very procedure for lawmaking on which *Garcia* relie[s] to protect states' interests" (emphasis in original). L. Tribe, American Constitutional Law § 6-26, at 480 (2d ed. .1988).

The Supreme Court has expressly adopted a clear statement rule in the related context of the States' constitutional immunity from suit in Federal court under the Eleventh Amendment. While Congress undisputedly has the power to abrogate the States' Eleventh Amendment immunity, it may do so "only by making its intention unmistakably clear in the language of the statute." *Atascadero State Hosp.* v. *Scanlon*, 473 U.S. 234, 242 (1985). Accord *Pennhurst State School & Hosp.* v. *Halderman*, 465 U.S. 89, 99 (1984); *Edelman* v. *Jordan*, 415 U.S. 651, 673 (1974). In this context the rule would ensure that "Congress has considered, and has clearly chosen to over-

ride, the federalism interests compromised by federal suits against states." L. Tribe, American Constitutional Law § 3-26, at 187 (2d ed. 1988).

Similarly, in *United States* v. *Bass*, 404 U.S. 336, 349 (1971), the Court stated that it would read narrowly Federal criminal laws punishing "conduct readily denounced as criminal by the States," on the ground that "unless Congress conveys its purposes clearly, it will not be deemed to have significantly changed the federal-state balance." This principle extends far beyond the criminal law context: "In traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." *Id.*

Congress did not intend to preempt State laws mandating the retirement of appointed State judges at a particular age. Congress has exempted from FADEA persons elected to office, which includes the vast majority of State judges in this country. Considering other exemptions of the FADEA (see 29 U.S.C. §§ 630[f] & 631[c][1]), and the exemption of elected officials, the conclusion is inescapable that, if Congress had contemplated the matter, it would have exempted all State judges from the FADEA. Nothing in the legislative history of the 1986 amendment indicates that Congress intended the amendment to apply to judges, and certainly there is nothing to indicate that Congress intended the amendment to apply to some State judges and not to others. The more closely the statute is examined, the more unavoidable becomes the conclusion that this anomaly is a product of congressional inadvertence.

There is no logical or rational reason why elected Justices of the Supreme Court of Washington, for example, may be required by State law to retire at a given age and Justices of this court may not. Indeed, this would be a particularly irrational discrimination because people who vote for a judge can know that his or her term will extend beyond a particular age, assess his or her competence, and vote accordingly. Yet, in spite of the opportunity voters in such States have to weed out

superannuated judges, the FADEA allows elected judges to be retired at a given age.

Well before the first word of the Constitution of the United States was written, the Constitution of this Commonwealth provided that it was "the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit." Art. 29 of the Declaration of Rights. The Constitution of the Commonwealth generally provided that all judicial officers "shall hold their offices during good behavior." Part II, c. 3, art. 1. See also art. 29 of Part I ("the judges of the supreme judicial court should hold their offices as long as they behave themselves well"). This Commonwealth has never wavered from the principle that an independent and competent judiciary can best be achieved and maintained by the appointment, rather than by the election of judges. The Constitution of the United States followed this course and provides for the appointment of judges who "shall hold their offices during good behavior." Art. III, § 1, of the United States Constitution.

When in 1972 the people of the Commonwealth approved the amendment requiring judges to retire at age seventy, they expressed the view that judges should be appointed and not elected, but that they should retire at age seventy. There is no reason why the 1986 FADEA amendment must be read to force the people of the Commonwealth, if they wish their judges to retire at age seventy, to amend the State Constitution to provide for the election of judges (and thus for their retirement at age seventy). Congress did not intend such a result, whatever the FADEA may say if read literally. It seems clear the Congress did not even consider the consequences of the 1986 amendment on the State judiciary. The application of the 1986 amendment to State judges, making a distinction between elected and appointed judges, would produce a helter-skelter, irrational pattern throughout the country.

The people of Massachusetts do not want their judges to serve beyond the age of seventy (except in the special circumstances of being recalled to serve [G. L. c. 32, § 65G]). A line drawn at age seventy eliminates the anguish, time, delay, expense, and embarrassment of the supervision and

removal of older judges of failing competence pursuant to an evaluation process. An age limit on the service of judges also tends to assure that important decisions affecting citizens and the future of the Commonwealth will be made by judges who command respect because they share experiences and understandings similar to those of the majority of adult citizens of the Commonwealth. Generational differences in points of view are not fanciful. Moreover, at this time and certainly for the near future, a mandate that judges retire at seventy makes it possible to increase the proportion of minority group members and women in the judiciary, thereby making the judiciary more representative of society.

We acknowledge that people of continuing ability are serving and have served as judges beyond the age of seventy. Our view simply is that Congress has not made a conscious choice to override the wishes of the people of the Commonwealth and that, in this area of State-Federal relations, if such an act of preemption is constitutionally permissible, Congress certainly must act knowingly and perhaps even should be required to act logically.

We cannot fairly attribute to Congress an intention, and certainly not a clear intention, to dictate an absurd result. We decline to read the 1986 amendments to the FADEA in a vacuum. The FADEA does not preempt the mandate of the State Constitution that judges must retire at the age of seventy. A declaratory judgment to that effect shall be entered in the Supreme Judicial Court for the county of Suffolk.

*So ordered.*