**Robert KEAVENEY, Paul Burke and Robert Simard, Plaintiffs,**

v.

**TOWN OF BROOKLINE and Local 1358, American Federation of State, County and Municipal Employees, Defendants.**

**Civil Action No. 95–CV–11176–REK.**

United States District Court,
D. Massachusetts.

July 3, 1996.

F. Robert Houlihan, Heavey & Houlihan, Brookline, MA, for plaintiffs.

George F. Driscoll, Jr., David Lee Turner, Town of Brookline, Brookline, MA, for defendant Town of Brookline.

Wayne Soini, AFSCME, Council 93, Boston, MA, David Lee Turner, Town of Brookline, Brookline, MA, for defendant Local 1358, American Federation of State, County and Municipal Employees.

## Memorandum and Order

KEETON, District Judge.

The following motions are now pending before this court:

(1) Defendant Town of Brookline's Motion for Summary Judgment (Docket No. 11, filed April 18, 1996), and Memorandum in Support of Motion for Summary Judgment (Docket No. 12, filed April 18, 1996).

(2) Plaintiffs' Cross–Motion for Summary Judgment (Docket No. 13, filed May 2, 1996) and Memorandum Supporting Plaintiffs' Cross–Motion and Opposing Defendant's Motion for Summary Judgment (Docket No. 14, filed May 2, 1996). A response to plaintiffs' Cross–Motion was filed by defendant Town of Brookline (Docket No. 17, filed May 16, 1996).

## I.

Plaintiffs in this case challenge the validity of Defendant Town of Brookline's "Controlled Substances and Alcohol Use and Testing Policy" (the "Testing Policy"). Specifically, plaintiffs challenge the provisions requiring random drug and alcohol testing of current and prospective employees who are required to drive Brookline commercial vehicles.

Defendant Town of Brookline ("Brookline") asserts that its Testing Policy is required by the Omnibus Transportation Employee Testing Act of 1991 (the "Act"). Under the authority of the Act, the Federal Highway Administration ("FHWA") promulgated rules governing drug and alcohol testing of drivers who hold a commercial drivers license ("CDL"). Brookline asserts that the Act mandates that it test employees who drive its commercial vehicles. Plaintiffs are employees to which the Testing Policy will apply.

Defendant Union, Local 1358, American Federation of State, County and Municipal Employees (the "Union"), plaintiffs' collective bargaining representative, also believes that

the Testing Policy is mandated by the FHWA rules. The Union has informed its membership that it has entered into discussions with Brookline over conditions of punishment under the Testing Policy. It has not presented to its membership for discussion, guidance or a vote, any issue as to whether the FHWA rules apply to Brookline CDL holders.

Plaintiffs request declaratory relief based on the following claims:

Count I: Brookline's Testing Policy violates plaintiffs' rights under the Massachusetts Declaration of Rights, Articles I, X, XII and XIV.

Count II: Brookline's Testing Policy violates plaintiffs' rights to privacy under the Massachusetts Privacy Act, G.L. c. 214, § 1B.

Count III: Brookline's Testing Policy violates plaintiffs' civil rights under Massachusetts General Laws c. 12, § 11H and § 11I, and Federal Law 42 U.S.C. § 1983.

Count IV: Brookline's Testing Policy violates 49 C.F.R. § 382, the FHWA rules, in that the rules do not mandate that Brookline adopt a drug and alcohol testing policy for its CDL holders. I must consider whether this "claim" is, in essence, no more than a contention in anticipation of a pre-emption defense.

Count V: The provisions, implementation and consequences of Brookline's Testing Policy are conditions of employment over which Brookline and the Union are required to bargain. The failure of Town and the Union to negotiate, and the Union's failure to submit the issues to membership for debate and vote, allegedly violate plaintiffs' rights under Massachusetts General Laws c. 150E, § 10(a)(1) and § 10(b)(1).

Defendant Brookline seeks summary judgment against plaintiffs on all counts.

## II.

Summary judgment under the Federal Rules of Civil Procedure is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A failure to offer proof on any one element necessarily renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53. Another way of stating essentially the same point is to say that the moving party prevails on a motion for summary judgment if it demonstrates both that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

If the nonmoving party is the party with the burden of proof at trial on a material issue, the nonmoving party must respond to a motion for summary judgment with evidence of specific facts showing a factual issue worthy of trial. *Id.* at 324, 106 S.Ct. at 2553. The evidence proffered by the nonmoving party must be enough to permit a fact-finder to return a verdict against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

## III.

Defendant Brookline has submitted a statement of proposed material facts as to which it contends there is no genuine issue to be tried. In their Response and Cross–Motion for Summary Judgment, plaintiffs have proffered their version of the facts. Plaintiffs' assertions, however, do not contradict the facts outlined in defendant's submissions. Some of plaintiffs' facts are contentions that relate to defendant's assertions and others concern facts not recited by defendant. Defendant does not contradict plaintiffs' new factual assertions in its response.

The record before this court shows that the facts not disputed are as follows:

Defendant Brookline is a political subdivision of the Commonwealth of Massachusetts. Plaintiffs are employees of Brookline's Public Works Department, are CDL holders and are assigned to drive Brookline commercial vehicles as part of their duties. All plaintiffs were members of the defendant Union when this action was commenced. Plaintiffs Si-

mard and Burke are still members of the defendant Union. The Union represents employees of Brookline's Public Works Department in collective bargaining negotiations with Brookline regarding employment conditions.

Acting under the authority of the Omnibus Transportation Employee Testing Act, the FHWA promulgated rules governing alcohol and drug testing of covered employees who hold a CDL. Brookline, through its representative body, adopted a Testing Policy that it contends is required by the Act. The Testing Policy requires pre-employment, post-accident, random, reasonable suspicion and return-to-duty controlled substance and alcohol testing. Defendant Union has bargained over implementation procedures for the Testing Policy. Bargaining over implementation procedures is ongoing.

Brookline owns approximately forty-one vehicles of a size such that the gross weight of each is at least 26,001 pounds. Approximately eighty-two of Brookline's employees, including the plaintiffs, are both CDL holders and assigned to drive Brookline's commercial vehicles. Any employee who drives a Brookline commercial vehicle must hold a CDL. For the majority of time Brookline uses these trucks to transport Town property within the Town limits, and to maintain the Town's property, roadways and buildings. On at least four occasions, however, Brookline commercial vehicles have traveled out of Massachusetts, including trips to Connecticut to pick up a purchase of green clay, and to New Hampshire to pick up a purchase of granite curbing. Brookline commercial vehicles have also traveled out of state for certification and repairs. Brookline trash packers transport Brookline's trash to a transfer station from which a private contractor transports it to Maine.

**IV.**

In Counts I, II, and III, plaintiffs assert claims under the Massachusetts Declaration of Rights, the Massachusetts Privacy Act, and Massachusetts Civil Rights Statutes. To these claims, defendant raises the defense of pre-emption. Defendant contends that federal law mandates that the Town promulgate a drug and alcohol testing program regulating its employees who are assigned to drive commercial vehicles. Defendant argues that any state claim raised by plaintiffs must therefore be pre-empted by the Act. To hold otherwise, defendant argues, would frustrate the intentions of Congress and create an obstacle to the achievement of the goals of the Act.

In their Opposition to the Town's Motion for Summary Judgment and in support of their own Cross–Motion, plaintiffs argue that Brookline is not covered by the Act and that plaintiffs' state law claims are therefore not pre-empted. Plaintiffs further argue that even if Brookline is covered by the Act, Congressional intent is not sufficiently clear to allow pre-emption of plaintiffs' state constitutional claims.

**A. The Purpose of the Transportation Employee Testing Act.**

Section 2 of the Act, reciting Congressional findings, states that the purpose of the Act is to control alcohol and drug use by transportation workers. The use of alcohol and drugs by this class of workers is especially troubling because of its link to transportation accidents. This concern is supported by statistics published by the Department of Transportation in its preamble to the drug screening regulations. That document states that "drivers of heavy and medium trucks with measurable alcohol concentrations are involved in about 750 fatal crashes annually, along with another 7,700 crashes resulting in personal injuries and 4,750 crashes involving only property damage." Limitation on Alcohol Use by Transportation Workers, 59 Fed. Reg. 7301, 7308 (February 15, 1994). In addition, the Department of Transportation notes that "an on-the-job accident is four times more costly than one that occurs in a personal vehicle, with an average cost to employers of $168,000 for a fatal accident and $6,900 for a non-fatal accident." *Id.* at 7308. Congress chose to require random testing of commercial drivers, in particular, based on its finding that random testing is "the most effective deterrent to abuse of alcohol and use of illegal drugs." Pub.L. No. 102–143,

§ 2(5), 1991 U.S.C.C.A.N. (105 Stat.) 952, 953.

## B. Applicability of the Transportation Employee Testing Act

The Act requires that the Secretary of Transportation prescribe regulations regarding drug and alcohol testing of commercial drivers. 49 U.S.C. § 31306. The implementing FHWA regulations, 49 C.F.R. ch. III, part 382, apply to all employers with employees who are both CDL holders and operators of commercial motor vehicles in commerce. The term "employer" includes "a State or a political subdivision of a State ... that owns ... a commercial motor vehicle or assigns employees to operate a commercial motor vehicle." 49 C.F.R. § 382.107 (1995).

■ Plaintiffs argue that the Act was meant to address safety problems particular to long distance tractor-trailer drivers rather than the drivers of smaller vehicles such as those owned and operated by Brookline. The text of the Act does not support plaintiffs' contention. Commercial vehicles are defined by the vehicle's weight and purpose, not whether it is a tractor-trailer. 49 U.S.C. § 31306. Covered commercial vehicles are those with a gross vehicle weight rating of at least 26,001 pounds that are used to transport passengers or property. 49 C.F.R. § 382.107. Brookline owns at least forty-one such vehicles, and, at varying times, has assigned eighty-two employees to drive these vehicles.

■ Plaintiffs' second argument is that Brookline drivers do not operate in commerce as defined by the regulations. The term "commerce," has been defined by the Department of Transportation as "(1) *Any* trade, traffic or transportation ... between a place in a State and a place outside of such State, ... and (2) trade, traffic, or transportation in the United States which *affects* any trade, traffic, and transportation described in paragraph (1) of this definition." 49 C.F.R. § 382.107 (emphasis added). Plaintiffs contend that the infrequent trips that Public Works employees make outside Massachusetts are not sufficient to bring Brookline within this regulatory definition.

I conclude, however, that regardless of how infrequent Brookline's direct interstate traffic is, it is enough to satisfy this regulatory definition. Defendant has cited at least four instances where the Public Works vehicles have traveled out of Massachusetts, that plaintiffs do not dispute. The regulation defines commerce as *any* such traffic or trade. In addition, Brookline trash packers use commercial vehicles to collect trash in preparation for a private contractor to transport it to the State of Maine. Under the common definitions used by the Supreme Court, this activity *affects* trade and traffic between States and provides another basis to conclude that Brookline's commercial drivers operate in "commerce." *See, e.g., Heart of Atlanta Motel v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); and *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

■ I conclude that 49 C.F.R., part 382 applies to defendant Brookline. Brookline is a political subdivision of the Commonwealth of Massachusetts; it owns forty-one vehicles that are within the definition of "commercial vehicle"; Brookline's commercial vehicles operate in commerce; and any employee assigned to drive Brookline's commercial vehicles must hold a CDL. Brookline is thus a covered employer, and its drivers are covered employees. As a covered employer, Brookline must adhere to all valid regulations in part 382, and perform all drug and alcohol testing these regulations require.

## C. Compatibility of Brookline's Policy with the Act.

■ Plaintiffs allege that the random testing provisions of Brookline's Testing Policy conflict with the Act. Random testing is, however, explicitly required by the Act and the FHWA regulations. *See,* 49 U.S.C. § 31306(b)(1)(A); 49 C.F.R. § 382.305. Plaintiffs also allege that the policy calls for observed urination and disclosure of personal medical information regarding use of prescription and over-the-counter drugs.

In their submissions, however, plaintiffs fail to offer any evidence in support of these allegations. I therefore reject these claims.

Defendant's Motion for Summary Judgment on Count IV, is therefore allowed.

## D. Pre-emption of State Law Claims

■ The United States Constitution and laws promulgated thereunder are the supreme law of the land. "The underlying rationale of the pre-emption doctrine, as stated more than a century and a half ago, is that the Supremacy Clause invalidates state laws that interfere with or are contrary to, the laws of congress." *Chicago & N.W. Transportation Co. v. Kalo Brick and Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981) (internal quotation marks and citations omitted). The supremacy of federal law overrides state constitutional provisions as well as state statutes. A state provision, however, is pre-empted only "to the extent that it actually conflicts with federal law." *Dalton v. Little Rock Family Planning Services,* —— U.S. ——, ——, 116 S.Ct. 1063, 1064, 134 L.Ed.2d 115 (1996) (per curiam).

■ When an act of Congress expressly defines its pre-emptive effect, a court must determine that the state law at issue is within the scope of that defined effect before it may declare the state law pre-empted. *See, Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 517, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992). A court can also declare a state law pre-empted if it determines that the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Jones v. Rath Packing Co.,* 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977).

Section 31306(g) of the Act contains express language of pre-emption. It provides:

A State or local government may not prescribe or continue in effect a law, regulation, standard or order that is inconsistent with a regulation prescribed under this section. However, a regulation prescribed under this section may not be construed to preempt a State criminal law that imposes sanctions for reckless conduct leading to loss of life, injury or damage to property.

■ The scope of this language is broad. It encompasses situations where a State law attempts to regulate in the same area as a federal law, but in a contradictory manner. It also encompasses situations where the enforcement of a State law might thwart the intention of Congress. In addition, the Department of Transportation has stated that "the purpose of preemption is to avoid the confusion and expense of inconsistent requirements for employers or testing entities that operate in several States...." 59 Fed.Reg. 7317. I conclude that the Act's pre-emptive language is clear: any state law provisions, the enforcement of which would obstruct the deterrent effect of this legislation or the nationwide uniformity of testing rules, are pre-empted.

■ Plaintiffs ask this court to invalidate Brookline's Testing Policy for violation of plaintiffs' rights under Massachusetts Law. Plaintiffs insist that they are not seeking a ruling on the federal regulations, but that they seek only to enjoin the implementation of Brookline's Testing Policy. In their view, whether the policy is required by federal law, or consistent with federal law is "almost immaterial." I conclude, however, that Brookline's Testing Policy cannot be divorced from the federal regulations that prompted it. Federal law *requires* covered employers to institute random drug and alcohol testing of its employees assigned to drive commercial vehicles.

■ Focussing on their Article XIV claim, plaintiffs argue that even if their statutory claims are pre-empted, their claim under Article XIV of the Massachusetts Constitution is not. They argue that before a state constitutional protection can be pre-empted, clear evidence of Congressional intent to preempt those particular protections must be present. Plaintiffs cite *Apkin v. Treasurer and Receiver General,* 401 Mass. 427, 517 N.E.2d 141 (1988), for this proposition. The court in *Apkin* held that a Federal age discrimination law did not pre-empt a state constitutional provision that required state judges to retire at age seventy. The court came to this conclusion for two reasons. First, the constitutional provision regulated the structure and operation of the judicial branch of the state government. The court was therefore especially reluctant to find

pre-emption. *Apkin,* 517 N.E.2d at 145. Second, Congress had expressly excepted persons elected to political office from the requirements of the Age Discrimination in Employment Act. The court noted that the judiciary in a majority of states were elected officials, and concluded that interests in nationwide uniformity, together with the likelihood that Congress did not have its attention called to this issue, were sufficient to defeat an inference of manifested intent to pre-empt. *Id.*

Article XIV of the Massachusetts Declaration of Rights provides protection for the citizens of Massachusetts against warrantless and unreasonable searches and seizures. Unlike the provision at issue in *Apkin,* Article XIV does not involve the structure of government. Rather, it involves an individual's rights in relation to the Commonwealth. In addition, Congress *has* clearly spoken regarding its intent to pre-empt state laws that frustrate the objectives of the Act. 49 U.S.C. § 31306(g). It would contravene the Supremacy Clause to allow a state constitutional provision to have greater force than federal law.

In summary, I conclude that all of plaintiffs' claims under the Massachusetts Declaration of Rights, Massachusetts Privacy Act, M.G.L. c. 214, § 1B, and Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H and 11I, are pre-empted. Defendant Brookline's Motion for Summary Judgment on Count I, Count II, and the State law claims of Count III are therefore allowed.

## V.

■ In their Count V, plaintiffs assert claims under the Massachusetts Public Employee Relations Statute, M.G.L. 150E. In their complaint plaintiffs allege that the Union should have submitted to its membership for discussion, guidance and vote, the question as to whether the Act and FHWA rules mandate that Brookline implement a drug and alcohol testing policy. The Department of Transportation has addressed this issue in their preamble to the testing regulations. They state that:

> The rules contemplate that many aspects of the employer/employee relationship with respect to these programs will be subject to collective bargaining. For example, who pays for assessment and evaluation is one area we explicitly do not regulate. However, employers and employees are not free to bargain away any of the requirements of these rules. Whatever rights they may have to bargain collectively or otherwise agree on employer-employee relations, they cannot change or ignore Federal safety standards. 59 Fed.Reg. 7301, 7317 (February 15, 1994).

The question as to whether the rules apply to Brookline employees is not up for decision by the membership. It is a question of law to be decided by a court of competent jurisdiction. As is true of the State law claims mentioned above, the Act pre-empts claims based on Brookline's failure to negotiate on the issue of applicability and on the Union's failure to submit the issue of applicability to the membership for vote under 150E, §§ 10(a)(1)(2) and 10(b)(1).

Plaintiffs also allege that the Union must submit to the membership, for a vote, issues regarding implementation of Brookline's Testing Policy, such as (a) the circumstances under which employees should be tested, (b) the testing standards and procedures, (c) the assignment of testing costs, and (d) rules for determining consequences of a positive test.

Defendant Brookline submitted statements from the Union representative and the Commissioner of the Department of Public Works supporting their claim that bargaining is ongoing between themselves and defendant Union regarding implementation of the Testing Policy. Plaintiffs have not rebutted this evidence, nor do they argue to the contrary in their Cross–Motion for Summary Judgment.

For all these reasons, plaintiffs have failed to meet their burden of coming forward with a proffer of admissible evidence to raise a genuine dispute of fact material to any of the claims they assert in Count V. Defendant's motion for Summary Judgment on Count V of the complaint is therefore allowed.

## VI.

■ In count III, plaintiffs also assert a claim under 42 U.S.C. § 1983. Under

§ 1983, plaintiffs must show that a government actor, acting under color of law, deprived plaintiffs of rights guaranteed under the U.S. Constitution or other federal law. *See, West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). Though not clearly stated by the plaintiffs, the court will assume that plaintiffs have alleged that Brookline's provision for random drug and alcohol testing violates plaintiffs' rights under the Fourth and Fourteenth Amendment. Plaintiffs have not proffered admissible evidence raising a genuine issue of material fact regarding their claim under § 1983. I therefore decide this issue as a matter of law based on the undisputed facts.

"The Fourth Amendment guarantees the privacy, dignity and security of persons against certain arbitrary and invasive [searches]" by government actors. *Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 613–614, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639 (1989). A search violates the Fourth Amendment, however, only if it is unreasonable, given the circumstances and nature of the search. *U.S. v. Montoya de Hernandez,* 473 U.S. 531, 537, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381 (1985). Because Brookline's Testing Policy has never been implemented, I inquire whether the random testing provisions can, under any set of facts, be considered reasonable. *Skinner,* 489 U.S. at 632, n. 10, 109 S.Ct. at 1421, n. 10.

A finding of probable cause is necessary to uphold a search under the Fourth Amendment except in circumstances identified in well defined exceptions. For example, the Supreme Court has held that routine searches of persons entering at the nation's borders are not subject to the requirement of reasonable suspicion or probable cause. *U.S. v. Montoya de Hernandez,* 473 U.S. at 538, 105 S.Ct. at 3309. The Court has also upheld a search of an employee's office without probable cause, concluding that an employee's privacy is not absolute, but must be assessed in the context of the operational realities of the workplace. *O'Connor v. Ortega,* 480 U.S. 709, 717, 107 S.Ct. 1492, 1497–98, 94 L.Ed.2d 714 (1987). In addition, the Court has held that a search of a student need only be based on reasonable suspicion, as determined by weighing students' expectation of privacy against administrators' needs to maintain school discipline. *New Jersey v. T.L.O.,* 469 U.S. 325, 341–343, 105 S.Ct. 733, 742–44, 83 L.Ed.2d 720 (1985). In defining these exceptions, the Court weighed the governmental interest in searching the individual against the individual's privacy interest.

If the government's interest is sufficiently compelling to justify an intrusion, without individualized suspicion, on an individual's reasonable expectation of privacy, then the search is allowable under the Fourth Amendment. *See, National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). In circumstances "where the government seeks to prevent the development of hazardous conditions or to detect violations that rarely generate articulable grounds for searching any particular place or person" the requirement for individualized suspicion may be relaxed. *Id.* at 668, 109 S.Ct. at 1392.

It is now well settled that compelled collection of bodily fluids or breath samples for testing for drugs or alcohol constitutes a search for Fourth Amendment purposes. *Skinner,* 489 U.S. at 616–618, 109 S.Ct. at 1412–14. A requirement of individualized suspicion is obviously not satisfied in a random testing program. To determine whether the relaxation of the individualized suspicion requirement is proper in this case I must weigh the employees' reasonable expectation of privacy against the governmental interest that is served by the intrusion.

In the two leading Supreme Court cases considering, under Fourth Amendment jurisprudence, drug and alcohol testing of employees, the Court found two governmental interests compelling enough to allow testing without individualized suspicion: maintenance of a workforce of fit employees with "unimpeachable integrity and judgment," and enhancement of public safety. *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 670, 109 S.Ct. 1384, 1393, 103 L.Ed.2d 685 (1989); *Skinner v. Railway Labor Executives' Assoc.,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). The

Court did not, however, cast a wide net and hold that a *general* interest in workforce integrity or public safety was sufficient to eliminate a requirement of individualized suspicion. These governmental interests were tied to the "operational realities of the workplace." *Ortega*, 480 U.S. at 717, 107 S.Ct. at 1497. Nor did the Court "[make an] effort to articulate an analytical rule by which legitimate drug-testing programs could be distinguished from illegitimate ones." *Harmon v. Thornburgh*, 878 F.2d 484, 488 (D.C.Cir. 1989), *cert. denied*, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990). Thus, the "[a]pplication of *Von Raab* [and *Skinner*] to the facts of the present case presents a delicate task." *Id.*

The programs at issue in *Skinner* and *Von Raab* can be distinguished from Brookline's Testing Policy.

In *Skinner*, the Court upheld Federal Railroad Administration regulations mandating drug and alcohol testing of employees after serious railroad accidents. It also allowed testing of employees who had violated certain safety regulations. The program in *Skinner* was not truly random. Instead, testing was triggered by an event such as a train accident or safety rule violation. Thus, though there was no requirement of "individualized suspicion of any particular employee, [the program at issue in *Skinner*] at least require[d] concrete evidence that events ha[d] not gone as planned." *Harmon*, 878 F.2d at 488. Dispensing with the individualized suspicion requirement in such cases facilitates the gathering of vital information that might disappear after a few hours in an employees' bloodstream. The public safety concerns regarding the Railroad industry and the deterrent effect of the testing program further supported a relaxation of the individualized suspicion requirement.

In *Von Raab*, the Court was concerned with both workforce integrity and public safety. It upheld urinalysis testing of individuals who were seeking transfer into positions directly involved in drug interdiction or that required the carrying of firearms. *Von Raab*, 489 U.S. at 659, 109 S.Ct. at 1387.

Lower courts have rejected the notion that a generalized desire for workplace integrity is sufficient to overcome the need for individualized suspicion. *Harmon*, 878 F.2d at 490. Each of the customs officers to be tested in *Von Raab* was to be working on the front line of drug interdiction or required to carry and use firearms, or was an employee in both these categories. The unique mandate of these customs officers to control the flow of drugs into the nation, their access to contraband, and the potential that they might use deadly force, all demanded a particularly high level of integrity.

In addition to approving searches without a requirement of individualized suspicion in *Skinner* and *Von Raab*, the Court has done so in other unusual circumstances, such as when a search furthers the national interest in maintaining secure borders. *See, United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (allowing suspicionless searches of vehicles along the nation's borders for the presence of undocumented immigrants). The Court also favorably cited lower court cases upholding drug and alcohol testing of employees in industries where a mistake in judgment could lead to catastrophic public harm such as a nuclear accident. *See, Skinner*, at 628, 109 S.Ct. at 1419.

Support for random testing, in particular, is found in identified unusual circumstances, beyond those described in the Supreme Court decisions discussed above. The Ninth Circuit, for example, has upheld the Department of Navy's random testing of civilian employees who hold high level security clearances. *American Federations of Government Employees, Local 1533 v. Cheney*, 944 F.2d 503 (9th Cir.1991). Random testing of office workers with access to a database of sensitive drug interdiction records has also been approved, *National Treasury Employees Union v. U.S. Customs Service*, 27 F.3d 623 (D.C.Cir.1994), as has random testing of prison employees who have direct contact with inmates. *AFL–CIO v. Roberts*, 9 F.3d 1464 (9th Cir.)

Only once has the First Circuit explicitly addressed the issue of whether random drug testing of employees violates the Fourth Amendment. In *Guiney v. Roache*, 873 F.2d

1557 (1st Cir.1989), *cert. denied,* 493 U.S. 963, 110 S.Ct. 404, 107 L.Ed.2d 370 (1989), the court issued a per curiam decision vacating a district court's ruling that a Boston Police Department regulation requiring random urinalysis screening of employees violated the Fourth Amendment. The district court's ruling was handed down before the Supreme Court's decisions in *Skinner* and *Von Raab;* the Circuit Court's decision came afterward. Unable to "find a relevant distinction between a customs officer and a police officer in light of *Von Raab,*" the First Circuit held the Police Department's rule constitutional in as far as it applied to employees who carried firearms or enforced drug laws. As to whether employees who performed other functions could be tested, the First Circuit remanded to the district court for further proceedings. *Guiney,* 873 F.2d at 1558. Because of later developments, the remanded issue was never brought to final disposition in the district court.

Defendant argues that any questions in this Circuit about the validity of random drug testing are foreclosed by the First Circuit's decision in *Guiney.* This overstates the holding in *Guiney.* Plaintiffs' case does not involve law enforcement, drug interdiction or carrying of firearms, nor is the challenged provision one that is triggered by an event such as a highway accident. The proposed random testing involves Public Works Employees whose time is primarily spent transporting Town property within the Town limits and maintaining the Town's property, roadways and buildings. The trucks involved do not regularly transport passengers other than the employees. Nor is it alleged that the vehicles transport hazardous materials that might give rise to an evacuation in the event of an accident. Among others, the vehicles include fourteen dump trucks, five "snow fighters," seven rubbish packers, one crane, and one tractor. These vehicles are large vehicles that could be deadly in the hands of an employee lacking judgment because of drug or alcohol intake. The use of these vehicles, thus, implicates the same safety issues that concerned the Court in *Skinner.*

The Ninth Circuit has considered issues similar to those in this case. In 1991 it denied a petition for review of FHWA drug and alcohol testing regulations aimed at bus and truck drivers. *International Brotherhood of Teamsters v. Department of Transportation,* 932 F.2d 1292 (1991). In upholding random testing, the court relied heavily upon the fact that, in order to maintain their CDLs, truck drivers were subject to biennial medical examinations including urinalysis to detect controlled substances. *Id.* at 1300. The court reasoned that the extensive medical exam and other regulations imposed on drivers diminished their reasonable expectation of privacy. *Id.* at 1302. The court found that the possibility of additional compelled urine samples was an incrementally insubstantial intrusion on the drivers' privacy. *Id.* at 1305. The important governmental interest in deterring drug and alcohol abuse in this class of drivers was therefore sufficient to override the drivers' diminished privacy interest. *Id.* at 1304.

The Ninth Circuit's reasoning in *Teamsters* has force. Because the Supreme Court has thus far done no more than remove the need for individualized suspicion before a search in limited circumstances, however, I have proceeded to weigh plaintiffs' privacy interest against the governmental interest before deciding the matter before me.

## A. Employee's Privacy Interest

Plaintiffs challenge only the random testing provisions of Brookline's Testing Policy. Like the drivers in *Teamsters,* 932 F.2d 1292, plaintiffs, as CDL holders are subject to regulation: they must pass a skills test and, if they drive vehicles interstate, must pass a medical examination. *See,* 49 C.F.R. § 383.71. In meeting these requirements, plaintiffs are opening part of their private lives to governmental regulation. As they do, they lose a measure of their expectation of privacy. Indeed, screening for controlled substances is among those tests to which interstate drivers must submit in their biennial medical exam. *See,* 49 C.F.R. § 391, subparts E and H.

Brookline's Testing Policy provides for monthly random testing up to the required

annual percentage of driver positions mandated by the Act. A given employee could be subject to a monthly random drug or alcohol screening, if randomly chosen for screening that month. Thus, a given employee might be chosen for repeated searches over the course of his career. Of course, the same employee would not be subject to such frequent screening if not randomly chosen.

This intrusion is not minimal. A substantial difference exists between requiring drivers to submit to one medical examination every two years that includes a urinalysis for controlled substances, and repeatedly compelling production of urine, blood or breath samples for the sole purpose of testing for drugs or alcohol.

Plaintiffs are subject to regulation by the government, including regulation in the area of drug and alcohol testing. Once the government has imposed some regulation on an employee, such as background investigations or medical examinations, the employee cannot expect the same level of privacy as individuals who are free from such requirements. *Von Raab*, 489 U.S. at 677, 109 S.Ct. at 1397. I do not, however, find that the intrusion upon the security and privacy of plaintiffs is negligible even though they are already subject to regulation. After submitting to the biennial medical examination, plaintiffs still retain a significant privacy interest in remaining free from compelled suspicionless drug and alcohol testing on a regular basis. That interest must be outweighed by a compelling governmental interest before the proposed intrusion is allowable.

## B. Governmental Interest

The Act and the FHWA regulations make clear that deterrence of drug and alcohol use by commercial drivers is the primary objective of the random testing provisions. Deterrence of potentially hazardous behavior is a valid and important governmental objective. The Court stated in *Skinner* that "[w]hile no procedure can identify all impaired employees with ease and perfect accuracy, the regulations supply an effective means of deterring employees engaged in safety-sensitive tasks from using controlled substances or alco-

hol[.]" *Skinner*, 489 U.S. at 629, 109 S.Ct. at 1420. In essence, the government hopes to minimize the number of fatalities on our nations' roads at the hands of commercial drivers who are impaired by drugs or alcohol. This is a substantial and important government interest.

## C. Weighing the Interests

As the Department of Transportation statistics show, fatalities on this nation's highways are annually in the thousands. The use of alcohol and drugs is associated with many of these deaths. The Court, in *Von Raab* and *Skinner*, manifested concern about situations where the impaired judgment of an employee could have a causal connection with catastrophic events such as an improper use of deadly force or a railroad or nuclear accident. Similarly, if the judgment of an employee in the position of the plaintiffs was impaired, one mistake while driving a Brookline commercial vehicle, could result in fatalities or serious injuries to members of the public.

The Supreme Court has only recently allowed for searches without individualized suspicion, and even then, only in the few limited circumstances discussed above. I conclude, however, that the present case is within the exceptional circumstances where the government interest in drug and alcohol screening outweighs the individual interests that underlie the usual requirement of individualized suspicion.

Congress has expressly found that random testing is the most effective deterrent to limiting the number of drug and alcohol related accidents on the nation's highways. Although I find that the intrusion imposed upon the plaintiffs in this case is substantial, still it is true that the government has a legitimate, compelling interest in seeking "to prevent the development of hazardous conditions or to detect violations that rarely generate articulable grounds for searching any particular place or person[.]" *Von Raab*, 489 U.S. at 668, 109 S.Ct. at 1392.

I conclude that Brookline's Testing Policy does not violate the Fourth Amendment and plaintiffs' claim under 42 U.S.C. § 1983 fails.

## ORDER

For the foregoing reasons, it is hereby ORDERED:

(1) Defendant's Motion for Summary Judgment (Docket No. 11, filed April 18, 1996) is ALLOWED.

(2) Plaintiffs' Cross–Motion for Summary Judgment (Docket No. 13, filed May 2, 1996) is DENIED.

(3) A status and scheduling conference is set for August 1, 1996, at 12:30 p.m.