Daniel HOWELL, Plaintiff,

v.

LAB ONE, INC., a Missouri Corporation, Lab One, Inc., a Delaware Corporation, Union Pacific Railroad Co., a Utah Corporation, Defendants.

No. 8:02–CV–73.

United States District Court,
D. Nebraska.

July 3, 2002.

Henry N. Carnaby, Union Pacific Law Department, Omaha, NE, for Union Pacific Railroad Company.

Joseph S. Daly, Sodoro, Daly Law Firm, Omaha, NE, for Lab One, Inc.

Richard J. Dinsmore, Omaha, NE, for Daniel Howell.

Jayson D. Nelson, Omaha, NE, for Daniel Howell.

### MEMORANDUM AND ORDER

BATAILLON, District Judge.

This matter is before the court on plaintiff's motion to remand, Filing No. 9, and on plaintiff's objections, Filing No. 22, to the report and recommendation of the magistrate, Filing No. 19. I have carefully reviewed the record, objections to the report and recommendation, the report and recommendation, the briefs in support and opposition and the relevant law. I conclude that the magistrate's recommendation should be adopted.

Plaintiff was hired as a freight conductor by defendant Union Pacific Railroad Co. (UP) in 1994. Random drug tests are performed on employees of the railroad. Defendant Lab One (Lab) was in the business of performing the drug testing on employees of the railroad. Lab tested the urine of the plaintiff and concluded that the sample was "not consistent with human urine." UP terminated plaintiff's employment.

On January 11, 2002, the plaintiff filed an action in the District Court of Douglas County against UP and Lab, alleging numerous state law causes of action. The petition claimed that the drug screening urinalysis was performed incorrectly on the plaintiff. On February 13, 2002, UP filed a notice of removal to federal court, and consent to such removal was given by defendant Lab. Thereafter, plaintiff filed a motion to remand this case back to state court. Plaintiff contended that there was no federal cause of action alleged in the state court petition.

UP argues that the plaintiff's case really arises under the Railway Labor Act, 49 U.S.C. § 151 *et seq.*, the Federal Railroad Safety Act, 45 U.S.C. § 20101 *et seq.*, and regulations promulgated by the Secretary of Transportation, at 49 C.F.R. Parts 40 and 219. UP further argues that the plaintiff's cause of action is preempted by the Federal Omnibus Transportation Employee Testing Act of 1991 (FOTETA), 49 U.S.C. § 31306. Plaintiff argues, however, that he does not bring his cause of action under any federal cause of action. Instead, plaintiff argues that his urine was improperly tested which resulted in violations of state law.

However, it is clear from a review of plaintiff's petition that the standards the defendants allegedly failed to use are the federal government standards. The core issue in this case is the federal drug testing regulations and their application in this case. As stated by the magistrate, "Though the plaintiff has couched his claim in terms of state law, it is clear he is challenging the termination of his employ-

ment as a result of a federally mandated random drug test and the CBA [collective bargaining agreement] between the plaintiff and defendant UPRR." Filing No. 19 at 8. I have carefully reviewed the report and recommendation of the magistrate, and I agree.

THEREFORE, IT IS ORDERED THAT:

1. The magistrate's report and recommendation, Filing No. 19, is hereby adopted in its entirety;

2. The motion to remand, Filing No. 9, is hereby denied; and

3. Plaintiff's objections to the report and recommendation, Filing No. 22, are denied.

## REPORT AND RECOMMENDATION

THALKEN, United States Magistrate Judge.

This matter is before the court on the plaintiff's motion to remand (Filing No. 9). The plaintiff submitted no brief in conjunction with the motion to remand, but was given leave to submit a brief (Plaintiff's Brief). Defendants LabOne, Inc., a Missouri Corporation, and LabOne, Inc., a Delaware Corporation,[1] submitted a brief in opposition to the motion to remand (LabOne Brief). Defendant Union Pacific Railroad Company (UPRR) submitted a brief in opposition to the motion to remand (UPRR Brief). Defendants LabOne were granted leave to submit a supplemental brief (Supplemental Brief) in opposition to the motion to remand. See Filing No. 18. For the reasons set forth below, the court will recommend the plaintiff's motion to remand be denied.[2]

---

1. For the sake of brevity, the court will refer to the two LabOne, Inc. defendants as "LabOne."

2. The court is entering a report and recommendation in this matter in light of the split in court decisions over whether a magistrate

judge has authority to rule on a motion to remand. Compare *Vogel v. U.S. Office Products Co.*, 258 F.3d 509, 517 (6th Cir.2001) (finding "remand motions are dispositive and, as such, can only be entered by district courts"), with *White v. State Farm Mut. Auto. Ins. Co.*, 153 F.R.D. 639 (D.Neb.1993) (con-

## BACKGROUND

The plaintiff filed the instant lawsuit against defendants LabOne, in the District Court of Douglas County, Nebraska on January 11, 2002. See Filing No. 1, Amended Petition. On January 14, 2002, the plaintiff amended the state court petition to include claims against defendant UPRR. *Id.* The plaintiff, a resident of Nebraska, was hired by defendant UPRR[3] on August 24, 1994, as a freight conductor. *Id.* Under federal law, random drug tests are performed upon railroad employees such as the plaintiff. *Id.* The LabOne defendants were businesses that, according to the plaintiff, "held themselves out to the public as entities that possessed the necessary professional skills to perform, test and interpret the drug screening process according to accepted industry standards." *Id.* The plaintiff claims he was required to submit to a random drug screening on January 14, 1998. *Id.* The plaintiff alleges the defendants tested his urine for both drugs and for a determination of whether the sample had been substituted, adulterated, or diluted. *Id.* The defendants concluded the sample the plaintiff provided was "not consistent with human urine" and defendant UPRR terminated the plaintiff's employment. *Id.* The plaintiff's state court petition contained claims for negligence, breach of contract, defamation, negligent misrepresentation, fraudulent misrepresentation, interference with existing business relationship, interference with prospective business relations, intentional infliction of emotional distress, and invasion of privacy. *Id.* The plaintiff claims he has lost over $200,000 in earnings and benefits since the termination. *Id.*

UPRR removed the present action to this court on February 13, 2002, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. See Filing No. 1. LabOne consented to the removal on February 15, 2002. See Filing No. 3. The defendants claim, in UPRR's notice of removal, that UPRR is a railroad engaged in interstate commerce and subject to the Interstate Commerce Act, 49 U.S.C. §§ 10101, the Railway Labor Act, 49 U.S.C. § 151(RLA), and the Federal Railroad Safety Act, 45 U.S.C. § 20101 (FRSA), as well as the regulations promulgated by the Secretary of Transportation in 49 C.F.R. §§ 40, 219. *Id.* The defendants allege the plaintiff was a member of the United Transportation Union (UTU). *Id.* The defendants claim the plaintiff's prior employment was subject to the terms of a collective bargaining agreement (CBA) between UPRR and UTU, which agreement provides that disputes such as the present suit are to be governed by procedures contained in the RLA. *Id.* Furthermore, the defendants claim the plaintiff has previously litigated these issues before the National Railroad Adjustment

---

cluding remand of a case to the state court was not an Article III function and could be ordered by a magistrate judge). In *Vogel,* the court concluded:

> [W]e apply a functional equivalency test to see if a particular motion has the same practical effect as a recognized dispositive motion. Applying that test, ... we too find that a remand order is the functional equivalent of an order to dismiss. The practical effect of remand orders and orders to dismiss can be the same; in both, cases are permitted to proceed in state rather than federal court.

*Vogel,* 258 F.3d at 517. Accord *First Union Mortgage Corp. v. Smith,* 229 F.3d 992 (10th Cir.2000), In re *U.S. Healthcare,* 159 F.3d 142, 145 (3d Cir.1998), and *Haag v. Hartford Life & Accident Ins. Co.,* 188 F.Supp.2d 1135, 1136 (D.Minn.2002). The undersigned magistrate judge finds a report and recommendation is the most appropriate course of action in this matter.

3. Plaintiff was actually employed by Chicago Northwestern Railroad beginning in 1994. Chicago Northwestern was purchased by UPRR after the plaintiff commenced his employment.

Board (NRAB), which has exclusive jurisdiction over disputes between an employee and a carrier regarding pay, work rules, or working conditions. *Id.* The defendants argue the foregoing facts support original subject matter jurisdiction in this court. *Id.*

The plaintiff filed the instant motion to remand on March 15, 2002. See Filing No. 9. The plaintiff claims the court lacks original jurisdiction over this case because no federal question exists. *Id.* The plaintiff disputes the defendants' claims that this suit arises under the RLA, FRSA, the Interstate Commerce Act, the Federal Omnibus Transportation Employee Testing Act of 1991 (FOTETA), and Secretary of Transportation regulations. *Id.* The plaintiff further disputes that all claims related to drug testing are preempted by the FRSA. *Id.* The plaintiff argues his claims are all made pursuant to Nebraska state law and common law and, thus, are within the jurisdiction and authority of Nebraska state courts. *Id.*

## ANALYSIS

### A. Subject Matter Jurisdiction

The parties have not presented arguments regarding diversity jurisdiction, nor does the court find diversity jurisdiction to exist; thus, a federal question must be present in order to confer federal jurisdiction over this case. *Missouri ex rel. Nixon v. Coeur D'Alene Tribe,* 164 F.3d 1102, 1108 (8th Cir.1999). 28 U.S.C. § 1441(c) provides:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

See 28 U.S.C. § 1441(c). According to the Eighth Circuit, "[t]he party seeking removal and opposing remand . . . ha[s] the burden of establishing federal subject matter jurisdiction." *In re Bus. Men's Assurance Co. of Am.,* 992 F.2d 181, 183 (8th Cir.1993) (citations omitted). Also, "[l]imitations on a court's removal may or may not be jurisdictional; but . . . the limits must be strictly construed and enforced." *Int'l Ass'n of Entrepreneurs of Am. v. Angoff,* 58 F.3d 1266, 1270 (8th Cir.1995) (citations omitted). Removal in federal question jurisdiction cases is "governed by the 'well-pleaded complaint' rule, which provides that federal jurisdiction exists only where a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Krispin v. May Dep't Stores Co.,* 218 F.3d 919, 922 (8th Cir.2000) (citations omitted). "[A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a [non-removable] claim transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 399, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In *Williams,* the Supreme Court noted:

> Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint . . . . The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

*Williams,* 482 U.S. at 392, 107 S.Ct. 2425 (citations omitted). Under the well-plead-

ed complaint rule, "a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case ... does not cause the plaintiff's claim to arise under federal law." *Hurt v. Dow Chem. Co.*, 963 F.2d 1142, 1144 (8th Cir.1992).

■ However, the Supreme Court has recognized an independent corollary to this well-pleaded complaint rule, known as the complete preemption doctrine. "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Williams*, 482 U.S. at 393, 107 S.Ct. 2425. See also *Hull v. Fallon*, 188 F.3d 939, 942 (8th Cir.1999) (quoting *Rice v. Panchal*, 65 F.3d 637, 640 n. 2 (7th Cir.1995) (noting that when preemption applies, the plaintiff's state law claims are " 'recharacterized' as a complaint arising under federal law.")). "To be completely preemptive, a statute must have 'extraordinary pre-emptive power,' a conclusion courts reach reluctantly." *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir.1996) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).

■ "A plaintiff's characterization of a claim as based solely on state law is not dispositive of whether federal question jurisdiction exists. In certain instances, the preemptive force of a federal statute is so complete that it transforms complaints styled as ordinary common-law claims into ones stating a federal claim." *Peters v. Union Pac. R.R. Co.*, 80 F.3d 257, 260 (8th Cir.1996) (citing *Taylor*, 481 U.S. at 65, 107 S.Ct. 1542).

Based upon the foregoing, the defendants in this case bear the burden of proving federal subject matter jurisdiction ex-

ists. The defendants must show the face of the plaintiff's well-pleaded complaint (state-court petition) presents a federal question. If no federal question is present on the face of the plaintiff's petition, the defendants will be required to show complete preemption of the plaintiff's state law claims to prove federal subject matter jurisdiction.

The face of the plaintiff's state-court petition contains allegations relating to breach of contract, negligence, defamation, negligent misrepresentation, interference with existing business relationship, interference with prospective business relations, intentional infliction of emotional distress, and invasion of privacy. See Filing No. 1. No claims regarding or alluding to federal jurisdiction are made in the petition. Id. Rather, the plaintiff's claims are all based upon Nebraska law and common law. Id. Thus, no federal question can be found on the face of the plaintiff's "properly pleaded complaint," as required by the Eighth Circuit. *Krispin*, 218 F.3d at 922. Furthermore, as noted above, "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a [non-removable] claim transform the action into one arising under federal law." *Williams*, 482 U.S. at 399, 107 S.Ct. 2425.

Nevertheless, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Williams*, 482 U.S. at 393, 107 S.Ct. 2425. The plaintiff admits, in the state court petition and in the Plaintiff's Brief, that his claims are based upon a drug screening urinalysis performed on or about January 14, 1998. See Filing No. 1, Ex. 1 ¶ 13; Plaintiff's Brief at 2. Furthermore, the plaintiff notes, in the petition, that the drug screening conducted

was done pursuant to federal law and regulations. See Filing No. 1, Ex. 1 ¶ 6. Finally, the plaintiff was covered by a CBA, which outlined the requirements that employees of defendant UPRR submit to random drug testing. See UPRR Brief at 3–4; Filing No. 1 ¶ 3.

■ Drug screening of railroad employees is an area where federal law completely preempts the field, pursuant to the statutory schemes found in FOTETA and, through FOTETA amendments, the FRSA. See Omnibus Transportation Employee Testing Act of 1991, Pub.L. No. 102–143, 105 Stat. 952 (1992) (codified as amended in scattered sections of U.S.C.). FOTETA specifically authorizes random and other types of drug tests of mass transit employees and expressly gives the Secretary of Transportation the authority to issue regulations governing such drug testing. *Id.*

Pursuant to FOTETA, the Secretary of Transportation has issued numerous regulations concerning drug testing of railroad employees. The preemptive effect of the regulations is outlined in their text. One of the regulations, 49 C.F.R. § 219.13(a) states, "issuance of the regulations in this part preempts any State law, rule, regulation, order or standard covering [drug testing]." See 49 C.F.R. § 219.13(a). The FRSA also contains express preemptive language. 49 U.S.C. § 20106 provides:

> Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement.

See 49 U.S.C. § 20106.

In *Poole v. Burlington N.R. Co.,* 987 F.Supp. 753 (D.Neb.1997), this court found federal law did not preempt state law with regard to alcohol testing of off-duty railroad employees. *Poole,* 987 F.Supp. at 769–70. However, unlike the present case, the *Poole* court analyzed an area of railroad safety where the Secretary of Transportation had not promulgated regulations—testing of off-duty railroad employees who enter onto company property. *Id.* at 769. The court refused to find state laws in this area were preempted by the secretary's regulation of alcohol and drug testing of railroad employees. *Id.* at 770. In fact, the court noted the defendant had not established it was Congress' manifest purpose to preempt the field as to alcohol testing of off-duty railroad employees. *Id.* at 757, 769. The court concluded:

> I cannot say that the Secretary of Transportation's failure to exercise the Secretary's full authority "takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute," such that the State of Nebraska is not permitted to use its police power to enact such a regulation[.]

*Id.* at 769 (quoting *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 178, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978)).

■ Still, the *Poole* court recognized that, "Congress has given the Secretary of Transportation the authority to 'as necessary . . . prescribe regulations . . . for every area of railroad safety supplementing laws and regulations in effect on October 16, 1970.'" *Id.* at 766 (quoting 49 U.S.C. § 20103(a) (1997)). In the instant case, the plaintiff's claims relate to a random drug test conducted pursuant to FOTETA, the FRSA, and the Secretary of Transportation's regulations, 49 C.F.R. § 219.01–.905. As noted above, the Secretary of Transportation has issued numerous regulations relating to drug testing of railroad employees. Also, the congressional intent to preempt this area of law is clear from

the language of the statute. According to one district court, "[s]ection 2 of the Act, reciting Congressional findings, states that the purpose of the Act is to control alcohol and drug use by transportation workers." *Keaveney v. Town of Brookline*, 937 F.Supp. 975, 980 (D.Mass.1996). The court noted that Congress chose random drug testing based on findings that random testing is "the most effective deterrent to abuse of alcohol and use of illegal drugs." *Keaveney*, 937 F.Supp. at 980 (citation omitted). Furthermore, the court summed up the preemptive scope of FOTETA, noting "the Act's pre-emptive language is clear: any state law provisions, the enforcement of which would obstruct the deterrent effect of this legislation or the nationwide uniformity of testing rules, are pre-empted." *Id.* at 982. "A court can also declare a state law pre-empted if it determines that the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 982 (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 526, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).

The federal regulations and statutes involved in this case are far more comprehensive than those involved in *Poole*. There, Congress had not evinced an intent to regulate the alcohol or drug intake of off-duty railroad employees; thus, the court determined that area of law had not been preempted. In the instant case, Congress has expressly manifested its intent to regulate all areas surrounding drug testing of railroad employees. Furthermore, the Secretary of Transportation has issued regulations regarding drug testing of employees. Clearly the statutes and regulations related to drug testing were intended to displace state law in this area. As the *Keaveney* court noted, "state law provisions, the enforcement of which would obstruct the deterrent effect of this legislation or the nationwide uniformity of testing rules, are pre-empted." *Keaveney*, 937 F.Supp. at 982.

Though the plaintiff has couched his claim in terms of state law, it is clear he is challenging the termination of his employment as a result of a federally mandated random drug test and the CBA between the plaintiff and defendant UPRR. Regardless of whether defendants LabOne used the proper testing techniques in testing the plaintiff's urine, the plaintiff would have no cause of action against the defendants had he not been subject to the various federal statutes and regulations and the CBA involved herein. This is the situation where the broad scope of federal preemption contained in FOTETA was meant to cover. Were all plaintiffs able to bring any number of state or common law actions in state courts subsequent to a negative result in a federally mandated drug test, the central purpose behind FOTETA—uniform safety and as a deterrent to drug use—would be severely undermined. The court finds the preemptive force of the federal statutory scheme involved in this area to be so complete that it transformed the plaintiff's state and common law petition into one stating a federal claim. *Peters*, 80 F.3d at 260 (citing *Taylor*, 481 U.S. at 65, 107 S.Ct. 1542).

## B. Unanimity

28 U.S.C. § 1446(b) provides:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not re-

quired to be served on the defendant, whichever period is shorter.

See 28 U.S.C. § 1446(b).

 The Eighth Circuit has determined that the rule of unanimity requires all defendants join in a notice of removal, and if all do not, the case must be remanded to the state court. *Marano Enters. of Kansas v. Z–Teca Rests., LP*, 254 F.3d 753, 755 n. 1 (8th Cir.2001) (citing *Chicago, R.I. & P. Ry. Co. v. Martin*, 178 U.S. 245, 251, 20 S.Ct. 854, 44 L.Ed. 1055 (1900)). Under the rule of unanimity, each defendant must file notice of its consent and intent to join in removal within the applicable thirty-day period. *Marano*, 254 F.3d at 755 & n. 1. For removal to be proper, all defendants must either join in the petition for removal or otherwise consent to removal. *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 368 (7th Cir.1993). "To join a motion is to support it in writing." *McShares, Inc. v. Barry*, 979 F.Supp. 1338, 1342 (D.Kan.1997) (citations omitted).

Defendants LabOne consented to defendant UPRR's notice of removal by filing a consent to removal on February 15, 2002. See Filing No. 3. The consent to removal was a sufficient written showing to satisfy the Eighth Circuit's unanimity requirement. Furthermore, the written consent was made only two days after defendant UPRR filed its notice of removal. The consent to the notice of removal was within the thirty-day limit imposed by section 1446(b) and, thus, removal was timely. Upon consideration,

**IT IS RECOMMENDED TO JUDGE JOSEPH F. BATAILLON that:**

The plaintiff's motion to remand (Filing No. 9) be denied.

### ADMONITION

Pursuant to NELR 72.4 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely appeal or object may constitute a waiver of any objection. The brief in support of any objection shall be delivered to Judge Joseph F. Bataillon at the time of filing such objection. Failure to submit a brief in support of any objection may be deemed an abandonment of the objection.

May 31, 2002.